**SMITH LILLIS PITHA LLP**
DAMIEN P. LILLIS (SBN 191258)
dlillis@slplawfirm.com
400 Montgomery Street, Suite 501
San Francisco, California 94104
Telephone:    (415) 814-0405
Facsimile:    (415) 217-7011

Attorneys for Plaintiff
Simmonds & Narita LLP

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SIMMONDS & NARITA LLP, a limited liability partnership,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JEFFREY SCHREIBER; SUZANNE E. SCHREIBER; and DOES 1 through 50, inclusive,<br><br>　　　　　Defendants. | Case No. CV 08 2209 SI<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR TRANSFER FOR "IMPROPER VENUE"**<br><br>[Request for Judicial Notice Submitted Separately]<br><br>Date:　　　July 25, 2008<br>Time:　　　9:00 a.m.<br>Courtroom: 10, 19th Floor<br>Judge:　　　Honorable Susan Illston |

1

2

**Table of Contents**

I.    INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY .......................................... 2

    A.    The Parties.................................................................................................... 2

    B.    The Underlying Alameda Litigation Sought To Hold The Defendants Liable
          Based On Their Conduct In Operating Their Debt Collection Businesses.................. 2

    C.    Defendants Hired Plaintiff Simmonds & Narita LLP To Defend Them In The
          Alameda Litigation And Refused To Pay For The Work. ........................................ 4

    D.    Plaintiff Filed Suit In San Francisco Superior Court And Defendants
          Voluntarily Removed This Action To Federal Court. ................................................ 5

III.    LEGAL ANALYSIS ............................................................................................. 5

    A.    The Removal Statute, 28 U.S.C. §1441, Governs Any Venue Determination
          In This Case And Venue Is Statutorily Proper In This District. ................................ 5

    B.    Because Venue In This Court Is Statutorily Proper, 28 U.S.C. §1406(a)
          Provides No Basis For Dismissal Or Transfer. ...................................................... 6

    C.    Neither The FDCPA Nor Its Venue Provisions Apply To This Case. ......................... 7

        1.    The FDCPA Does Not Apply Because Defendants' Obligation To Pay
              For The Defense Of The Alameda Litigation Is A "Business"
              Obligation, Not A "Consumer" Debt Covered By The FDCPA........................ 7

        2.    The Venue Provision Of The FDCPA Does Not Apply Because A
              Debt Collector Did Not File Suit On Behalf Of Plaintiff, And No Debt
              Collector Is Prosecuting This Case Now. ...................................................... 9

IV.    CONCLUSION ................................................................................................. 12

SMITH LILLIS PITHA LLP

400 Montgomery Street, Suite 501 • San Francisco, CA 94104 • 415-814-0405 (t) 415-217-7011 (f)

SMITH LILLIS PITHA LLP
400 Montgomery Street, Suite 501 • San Francisco, CA 94104 • 415-814-0405 (t) 415-217-7011 (f)

**Table of Authorities**

**Cases**

*Bacik v. Peek*, 888 F. Supp. 1405, 1413 (N.D. Ohio 1993) ............................................................. 7

*Bloom v. I.C. Systems, Inc.* 972 F. 2d 1067, 1068 (9th Cir. 1992) ................................................. 8

*First Gibraltar Bank v. Smith*, 62 F. 3d 133, 136 (5th Cir. 1995) ................................................. 8

*Hartford Fire Ins. Co. v. Westinghouse Elec. Corp.,* 725 F. Supp. 317, 320 (S.D. Miss. 1989) ............... 6

*IBC Aviation, Inc. v. Compania Mexicana de Aviacion,*
    125 F. Supp. 2d 1008, 1014 (N.D. Cal. 2000) ................................................................. 6

*Kotan v. Pizza Outlet, Inc.*, 400 F. Supp. 2d 44 (D.D.C. 2005) ..................................................... 7

*Polizzi v. Cowles Magazines*, 345 U.S. 663, 665-66 ....................................................................... 5

*Schroyer v. Frankel*, 197 F. 3d 1170, 1176 (6th Cir. 1999) ......................................................... 10

*Schroyer v. Frankel*, 197 F. 3d at 1176 ...................................................................................... 11

*Turner v. Cook*, 362 F. 3d 1219, 1228 (9th Cir. 2004) ................................................................. 8

**Statutes**

15 U.S.C. §1681 .......................................................................................................................... 2

15 U.S.C. §1692 .......................................................................................................................... 1

15 U.S.C. §1692a(5) ................................................................................................................... 8

15 U.S.C. §1692a(6) ................................................................................................................. 10

15 U.S.C. §1692i ......................................................................................................................... 5

15 U.S.C. §1692i(a) ................................................................................................................ 9, 10

28 U.S.C. §1391 .......................................................................................................................... 5

28 U.S.C. §1406(a) .................................................................................................................. 6, 7

28 U.S.C. §1441(a) ........................................................................................................... 1, 5, 7, 12

28 U.S.C. §1441(f) ...................................................................................................................... 6

**Treatises**

Schwarzer, Tashima, & Wagstaffe,
    Cal. Prac. Guide: Fed. Civ. Proc. Before Trial (Rutter Group 2007) §4:394 ....................................... 6

SMITH LILLIS PITHA LLP

400 Montgomery Street, Suite 501 • San Francisco, CA 94104 • 415-814-0405 (t) 415-217-7011 (f)

# I.    INTRODUCTION

Defendants Jeffrey and Suzanne Schreiber hired Plaintiff Simmonds & Narita LLP, a top San Francisco law firm specializing in the defense of the credit and collection industry, to defend them in litigation arising from Defendants' operation of a group of debt-collection and law-firm businesses. Plaintiff performed all the pre-trial work and showed up for the first day of trial fully prepared to try the case to verdict.  But the court moved the trial date, and Defendants then refused to pay the $88,552 they owed (and still owe) Plaintiff for defending them.  After withdrawing as counsel, Plaintiff sued in state court for the unpaid legal fees.  Defendants then removed the case to this Court.

Defendants' pending motion to dismiss or transfer for allegedly "improper venue" fails on the law and facts.  Defendants elected to remove this case to federal court, and thus the venue provisions of the removal statute (28 U.S.C. §1441(a)) govern all questions of proper venue.  Section 1441(a) provides that venue is proper in this Court as a matter of law.  Defendants ignored this controlling statute in their moving papers and failed to even acknowledge that they had removed this action from state court.  Defendants' motion should be denied on this basis alone.

Beyond this, Defendants' motion also fails because it is a complete distortion of the Fair Debt Collection Practices Act (15 U.S.C. §1692 *et seq*., the "FDCPA") and is riddled with fundamentally flawed premises.  Defendants basically contend that venue in this Court is improper because a "debt collector" purportedly filed this suit, based upon a "debt" allegedly covered by the FDCPA, and that, under a narrow provision of the FDCPA, a "debt collector" can file such a suit only in the county where Defendants reside or the county in which they signed the contract with Plaintiff.  Defendants are wrong.

The FDCPA simply does not, and cannot, apply.  Defendants' obligation to pay for the defense of litigation arising from the operation of their businesses is not a "consumer debt" incurred for "personal, household, or family purposes" under the FDCPA.  Instead, it is an obligation to pay for business-related services that the FDCPA does not cover.  And, a "debt collector" did not institute this suit, so the narrow venue provision of the FDCPA does not apply either, even if the FDCPA applied to Defendants' business obligations (it patently does not).

Venue is proper in this Court under the removal statute and the FDCPA does not apply. Plaintiff respectfully requests that the Court deny Defendants' motion.

SMITH LILLIS PITHA LLP
400 Montgomery Street, Suite 501 • San Francisco, CA 94104 • 415-814-0405 (t) 415-217-7011 (f)

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. The Parties.

Plaintiff Simmonds & Narita LLP is an AV-rated San Francisco law firm specializing in complex business litigation, with an emphasis on defending consumer financial services litigation and claims brought under the FDCPA and the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* ("FCRA"). *See* www.snllp.com. The firm's attorneys are specialists and regularly speak as invited guests at symposiums and continuing education seminars regarding the FDCPA and FCRA. *Id.*

Defendant Jeffrey Schreiber is an attorney admitted to practice law in Indiana, New York, Massachusetts, New Hampshire, and Washington D.C. *See* Declaration of Jeffrey Schreiber at ¶¶3-10, attached as Exhibit B to the accompanying Request for Judicial Notice ("RJN"). Defendant Jeffrey Schreiber also owned and operated debt collection agencies in addition to owning several law firms that share personnel with those collection firms. *See id.*, ¶¶9, 10; *see also* RJN, Exhibit H.

Defendant Suzanne Schreiber, together with her ex-husband Defendant Jeffrey Schreiber, owned and operated S&A Services of Marion, Ltd., a debt collection agency "call center" through which the Schreiber Defendants and their employees worked to collect debts owed by consumers. Declaration of Suzanne Schreiber at ¶¶3-12, attached to the RJN as Exhibit C. Through their employees at the debt collection and related law firm businesses, the Defendants collected debts and published information regarding debtors and their accounts to consumer reporting agencies such as Experian, Equifax, and TRW. *Id.*, ¶¶7, 8; Jeffrey Schreiber Decl., ¶¶9, 10.

### B. The Underlying Alameda Litigation Sought To Hold The Defendants Liable Based On Their Conduct In Operating Their Debt Collection Businesses.

The unpaid invoices for legal services at issue in this action do not constitute a "personal, family or household" debt within the meaning of the FDCPA. Because of the manner in which the Defendants allegedly operated their debt collection business, they became embroiled in financial services litigation in California. On August 25, 2004, Robert Siemons filed a lawsuit in Alameda County Superior Court (the "Alameda Litigation") alleging, in essence, that the Schreiber Defendants, through their related businesses, had defamed him and caused him severe emotional distress by inaccurately reporting information about Siemons to several consumer reporting agencies. *See* Siemons' Complaint, attached

as Exhibit A to the RJN.  Siemons named as defendants a host of law firms owned and operated by

Defendant Jeffrey Schreiber (The Schreiber Law Firm, LLC; Harris & Dial P.C.; and Schreiber &

Associates P.C.)  *See* "Doe Amendments" to the Siemons' Complaint, also attached as Exhibit A to the

RJN.  Siemons also named S&A Services of Marion, Ltd. as a defendant (the debt collection agency

owned by Defendants), and he named the Schreibers as defendants as well.  *Id.*

In the Alameda Litigation, Siemons sought to hold Jeffrey and Suzanne Schreiber liable based

on the manner in which they allegedly operated their debt collection and law firm businesses:

> The owners of a collection company who do not properly train the collectors and
> who devise and implement inadequate systems cannot escape liability because they
> do not personally know the alleged debtors who are harassed and victimized by
> illegal collection tactics. The law is just the opposite. The owners have a duty to
> properly train and supervise collectors so that the collectors do not break the law,
> and to devise and implement systems that make sure that the law is followed. It is
> foreseeable that the breach of these duties will result in the injury and damage to
> alleged debtors….
> ****
> The only issue is whether the Schreibers, as the owners, "top bosses" and creators of
> these companies, are responsible.
> ****
> Suzanne Schreiber was fully involved in the creation of the collection business….
> Not only was she CEO of every collection location [she addressed all of the day-to-
> day issues a CEO typically addresses].
> ****
> Jeffrey had his office located in the same facility as S&A of Marion.  Allegedly
> because Jeffrey Schreiber was the General Counsel for all of the collection entities,
> if his law practice did not pay the rent, S&A would pay for him….
> ****
> In 2003 the Schreibers were engaged in operating 3 debt collection locations, one of
> which was S&A Services of Marion, Ltd…. The center of the collection operations
> was Schreiber and Associates, P.C. … totally owned by Jeffery Schreiber….
> However, non-lawyer Suzanne Schreiber was CEO….

Siemons' Opposition to Motion for Summary Judgment at 2:1-7, 5-8; RJN Ex. D.

The Superior Court confirmed that the plaintiff in the Alameda Litigation had sought to hold the

Defendants liable for their allegedly unlawful business activities:

> The undisputed facts demonstrate that S&A [Services of] Marion [Ltd.] was a
> separately incorporated entity and that Defendants Jeffrey and Suzanne Schreiber
> were not a DBA for S&A Marion…. There are triable issues of material fact
> whether Defendants Jeffrey and Suzanne Schreiber can be held liable for the actions
> they took <u>as agent directors and officer of S&A Marion.</u>  <u>There is evidence that the</u>

SMITH LILLIS PITHA LLP

400 Montgomery Street, Suite 501 • San Francisco, CA  94104 • 415-814-0405 (t) 415-217-7011 (f)

<u>Schreibers authorized, directed, or meaningfully participated in torts committed by
the entity</u>.

Order Denying Summary Judgment at 1 (emphasis added), attached to the RJN as Exhibit E.

### C.    Defendants Hired Plaintiff Simmonds & Narita LLP To Defend Them In The Alameda Litigation And Refused To Pay For The Work.

In April 2007, after they became dissatisfied with their first set of attorneys in the Alameda Litigation, the Schreiber Defendants hired Plaintiff Simmonds & Narita LLP to defend them. *See* Plaintiff's Complaint (and its attached Engagement Agreement), attached as Exhibit 1. Plaintiff fully prepared the case for trial, conducted many depositions, and engaged in extensive law and motion practice (largely as a result of counsel for Siemons increasing the costs and expenses of litigation). *See, e.g.,* the extensive fifteen-page Docket from the Alameda Litigation, attached to the RJN as Exhibit G. Plaintiff Simmonds & Narita not only fully prepared the case for trial, but appeared with the Defendants on the first day of trial on November 2, 2007, ready to try the case to verdict. The Superior Court, however, continued the trial date for lack of an available court room. *See id.*

In October 2007, with a November 2, 2007 trial date looming, Plaintiff expressed serious concern over the Defendants' failure to timely pay for the professional legal services rendered in preparing the Alameda Litigation for trial, particularly in light of the extensive work made necessary by the conduct of counsel for Siemons. In response to these concerns, Defendants induced Plaintiff to continue representing them with countless oral and written promises to pay, including: "You will never have to worry that I am not going to pay you," and "I know how hard you work. You do a phenomenal job….You never have to worry about me paying you…. I promise you will get all the money that is billed," among others. Based on Defendants' promises and assurances, Plaintiff continued to represent the Defendants and devoted their efforts to getting the Siemons case ready for trial. Then, after Plaintiff completed all of the pre-trial work and the court continued the trial date, the Defendants refused to pay the $88,552.99 balance they owed for the work performed by Plaintiff. After much back and forth, Plaintiff informed Defendants they would need to retain new counsel. (Defendants then retained their third set of lawyers for the Alameda Litigation and ultimately obtained a defense verdict.)

**D.    Plaintiff Filed Suit In San Francisco Superior Court And Defendants Voluntarily Removed This Action To Federal Court.**

On March 13, 2008, Plaintiff filed a Complaint against Defendants in San Francisco Superior Court for the legal fees Defendants refused to pay.  On April 29, 2008, Defendants removed the action to this Court on diversity grounds.  Notice of Removal, attached to the RJN as Exhibit F.  (Although the fact of removal is dispositive of the relief sought by Defendants, as discussed below, Defendants' motion fails to even mention that Defendants removed this action from state court.)

**III.    LEGAL ANALYSIS**

Defendants basically contend that venue in this Court is improper because, in their unfounded view, a "debt collector" filed this suit based on a "debt" covered by the FDCPA, and a "debt collector" can file such a suit only in the county where Defendants reside or the county in which they signed the contract with Plaintiff (as purportedly provided by 15 U.S.C. §1692i).  In making these arguments, Defendants have ignored the law governing the proper venue of this removed action, and have done mental gymnastics in an effort to distort the FDCPA beyond all recognition.  (It is more than a little rich for the owners of debt collection firms to seek the protection of the FDCPA.)

**A.    The Removal Statute, 28 U.S.C. §1441, Governs Any Venue Determination In This Case And Venue Is Statutorily Proper In This District.**

Defendants' motion overlooks the consequences of their decision to remove Plaintiff's state-court action to this federal district court.  The removal statute, 28 U.S.C. §1441(a), governs all questions of venue for an action removed to federal court.  *Polizzi v. Cowles Magazines*, 345 U.S. 663, 665-66 ("The venue of removed actions is governed by 28 U.S.C. §1441(a)").  In a removed case, other venue statutes do not apply.  *See id.* (finding general venue statute, 28 U.S.C. §1391, inapplicable to a removed case).  Section 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, <u>to the district court of the United States for the district and division embracing the place where such action is pending</u>."  28 U.S.C. §1441(a) (emphasis added).  In other words, venue in this Court is proper and it is of no moment that other inapplicable venue provisions may exist.

Courts have held that, so long as a removed action satisfies 28 U.S.C. §1441(a), as this case does, venue is proper in the federal district court even if venue was not proper in the state court.  *See*

SMITH LILLIS PITHA LLP

400 Montgomery Street, Suite 501 • San Francisco, CA 94104 • 415-814-0405 (t) 415-217-7011 (f)

*IBC Aviation, Inc. v. Compania Mexicana de Aviacion,* 125 F. Supp. 2d 1008, 1014 (N.D. Cal. 2000) (a federal district court may assert jurisdiction over a matter removed from a state court where venue was improper under state law but compliant with §1441(a)).  Section §1441(f) essentially confirms this point: "The court to which a civil action is removed under this section is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim."  28 U.S.C. §1441(f).

As a leading treatise explains, in an action removed from state court to federal court, the removing party cannot claim that venue in the federal court is "improper," as Defendants assert here. This is so because removing an action under 28 U.S.C. §1441(a) establishes venue in federal court "automatically proper" even if venue in the state court was not:

> Actions Removed From State Court: In actions removed from state court, venue is *automatically proper* in the federal district court located where the state action was pending. It is immaterial that venue would not have been proper if the action had been brought initially in that district. The removal statute authorizes defendant to remove "to the district court ... embracing the place where such action is pending. 28 USC § 1441(a); see *Polizzi v. Cowles Magazines, Inc.* (1953) 345 US 663, 665–666, 73 S.Ct. 900, 902–903; *Kerobo v. Southwestern Clean Fuels, Corp.* (6th Cir. 2002) 285 F3d 531, 534….

Schwarzer, Tashima, & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Proc. Before Trial (Rutter Group 2007) §4:394 (emphasis original).[1]  In sum, because Defendants voluntarily removed this case from state court, this Court is, necessarily, the proper venue under § 1441(a).  *See Hartford Fire Ins. Co. v. Westinghouse Elec. Corp.,* 725 F. Supp. 317, 320 (S.D. Miss. 1989) ("defendant's voluntary application for removal confers venue over him").  Section 1441(a), therefore, renders irrelevant all the statutes and venue arguments raised in Defendants' motion – they simply do not apply.

**B.    Because Venue In This Court Is Statutorily Proper, 28 U.S.C. §1406(a) Provides No Basis For Dismissal Or Transfer.**

Defendants seek dismissal or transfer solely under 28 U.S.C. §1406(a).  *See* Motion at 1, 7:14-19.  That section provides as follows:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district … in which it could have been brought.

---

[1]  Counsel for Plaintiff called counsel for Defendants to discuss this readily-accessible authority in the hope of avoiding the need for a hearing on Defendants' motion.  Those efforts bore no fruit.

SMITH LILLIS PITHA LLP
400 Montgomery Street, Suite 501 • San Francisco, CA  94104 • 415-814-0405 (t) 415-217-7011 (f)

1    28 U.S.C. §1406(a) (emphasis added).

2    Section 1406(a) does not apply for two independent reasons.  First, as the plain language of

3    section 1406(a) suggests, the statute applies only if venue is improper in this Court.  Venue is proper

4    here under 28 U.S.C. §1441(a), as noted above.  As such, section 1406(a) does not, and cannot, apply,

5    as this Court is not a "wrong" venue, as required.  *See Bacik v. Peek*, 888 F. Supp. 1405, 1413 (N.D.

6    Ohio 1993) (Holding that, in light of the defendants' removal of the action, the Court could not dismiss

7    or transfer under 28 U.S.C. §1406(a) because it was "immaterial that this forum would obviously have

8    been an improper venue had this action been brought here originally…. By their voluntary application

9    for removal, the defendants have sanctioned the propriety of venue in this district and division.").

10    Second, a court may act pursuant to section 1406(a) only when a plaintiff <u>files</u> a case "in the

11    wrong division or district" of the federal courts.  28 U.S.C. §1406(a).  Defendants' motion ignores the

12    fact that Plaintiff did not file this case in this district (or any other federal district).  Plaintiff filed its

13    action in San Francisco Superior Court.  Complaint, Exhibit 1.  This case is now in the Northern District

14    only because Defendants voluntarily removed it from state court.  RJN, Exhibit F.  Because no party

15    "filed a case" in a federal district court, section 1406(a) does not apply and cannot support dismissal or

16    transfer.  *See Kotan v. Pizza Outlet, Inc.*, 400 F. Supp. 2d 44 (D.D.C. 2005) (denying motion under

17    §1406(a) because venue was proper under §1441(a) and noting that "a court may only act pursuant to

18    [§1406(a)] when a case is *filed* in the wrong venue").  Because Defendants cite no basis other than 28

19    U.S.C. §1406(a) to support their venue arguments for dismissal or transfer and that section does not

20    apply, Defendants have offered no authority for the relief they seek.[2]

21    **C.    Neither The FDCPA Nor Its Venue Provisions Apply To This Case.**

22    **1.    The FDCPA Does Not Apply Because Defendants' Obligation To Pay
       For The Defense Of The Alameda Litigation Is A "Business"
23    Obligation, Not A "Consumer" Debt Covered By The FDCPA.**

24    Conspicuously absent from Defendants' motion is a single case, secondary authority, or

25    statutory provision holding that the FDCPA applies to a business owner's obligation to pay for

26

27    [2]  Although some courts find that the only means of changing venue after removal is by way of a motion for a
28    "convenience" transfer under 28 U.S.C. §1404(a) (*see id.*), Defendants' motion requests no such relief.

SMITH LILLIS PITHA LLP
400 Montgomery Street, Suite 501 • San Francisco, CA  94104 • 415-814-0405 (t) 415-217-7011 (f)

professional legal services rendered in defending the business owner in litigation arising from his or her operation of a commercial enterprise (as is the case here). No such authority exists. The FDCPA plainly does not apply to Defendants' payment obligations.

The FDCPA applies only to "consumer" debts. 15 U.S.C. §1692a(5). It does not apply to obligations incurred for business or commercial purposes. *Bloom v. I.C. Systems, Inc.* 972 F. 2d 1067, 1068 (9th Cir. 1992). The FDCPA defines the "debts" subject to its terms as "obligation[s] of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction <u>are primarily for personal, family, or household purposes</u>...." 15 U.S.C. §1692a(5) (emphasis added). Put another way, "the Act applies [only] to consumer debts and not business loans." *Bloom*, 972 F. 2d at 1068.

While Defendants' motion pays lip service to the definition of "debt" under the FDCPA (Motion at 4:21-27), it ignores the very cases Defendants cite. In the Ninth Circuit, the determination of whether an obligation is subject to the FDCPA depends on the "end uses" of the services purchased and "whether [the] intended use can be characterized as 'primarily for personal, family or household purposes.'" *Bloom*, 972 F. 2d at 1068-69. In *Bloom*, the Ninth Circuit held that even though the plaintiff "personally" owed a debt for taking out an informal loan from a friend, the debt was not a "consumer" debt subject to the FDCPA because the plaintiff incurred the obligation to "invest[] the proceeds of the loan as venture capital in a software company with which he was closely associated." *Id*. at 1068-69. Because the plaintiff "borrowed the money to invest in a software company[, it] was a business loan" that was not subject to the FDCPA. *Id.* Other cases recognize that the FDCPA does not apply to obligations incurred for "business" reasons because such obligations are not for personal, family, or household purposes. *See, e.g., Turner v. Cook*, 362 F. 3d 1219, 1228 (9th Cir. 2004) ("We ... hold that the FDCPA does not apply to ... [a judgment] awarded for ... commercial torts"); *First Gibraltar Bank v. Smith*, 62 F. 3d 133, 136 (5th Cir. 1995) (debtor's obligation on a personal guaranty of a bank loan for the purchase and development of property not a "debt" under FDCPA because the guaranty obligation related to an underlying commercial transaction).

Defendants incurred the obligation to pay Plaintiff for legal services because, through the operation of Defendants' businesses (S&A Services of Marion, Ltd., Schreibers & Associates, The

Schreiber Law Firm, Harris & Dial, etc.), Defendants had allegedly published information about Robert

Siemons that caused Mr. Siemons harm.  The Alameda Litigation resulted from Defendants' operation

of a debt collection business.  It did not result from anything even remotely related to "personal, family,

or household purposes."  The obligation to pay for legal services arose from Defendants allegedly

engaging in commercial transactions and business dealings with reporting agencies, formulating

business policies and procedures (or failing to do so), and acting as the "top bosses" and owners of their

businesses.  RJN, Exhibit A-D.  Refusing to pay for the defense of the Alameda Litigation cannot

reasonably be compared with a consumer defaulting on a credit card bill for the purchase of home

furnishings or medical supplies, which might be considered "personal or household" purposes.

Defendants were sued and needed to hire lawyers because of how the Defendants ran their businesses.

This is not even a close call.

Defendants' motion also appears to confuse the issue of "personal liability" with the term

"personal" under the FDCPA.  *See* Motion at 5:7-18.  Courts are clear that the existence of personal

liability for repaying a business loan does not transmute a business loan into a "personal debt" subject

to the FDCPA.  *Bloom*, 972 F. 2d at 1068-69.  The same is true here: Defendants' personal liability for

paying legal fees is no different from any other business obligation they incurred in operating their

businesses.  It is a business obligation or expense, not a "consumer" debt of any kind.  (Tellingly, for

the legal bills that Defendants did choose to pay, they used a business account under the name

Consolidation USA, Inc., further underscoring the business nature of the obligations they incurred.)

        **2.**       **The Venue Provision Of The FDCPA Does Not Apply Because A Debt Collector Did Not File Suit On Behalf Of Plaintiff, And No Debt Collector Is Prosecuting This Case Now.**

Defendants' motion is also based upon the assumption that the case was filed by and is being

prosecuted by a "debt collector" within the meaning of the FDCPA.  Both assumptions are wrong,

which provides an additional reason why the motion must fail.  The "venue" provision of the FDCPA,

15 U.S.C. §1692i(a), states:

> Any <u>debt collector</u> who brings any legal action on <u>a debt against any consumer</u> shall--
> ***
> (2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity--
> (A) in which such consumer signed the contract sued upon; or

Case No. CV 08 2209 SI

SMITH LILLIS PITHA LLP
400 Montgomery Street, Suite 501 • San Francisco, CA 94104 • 415-814-0405 (t) 415-217-7011 (f)

1    (B) in which such consumer resides at the commencement of the action.

2  15 U.S.C. §1692i(a) (emphasis added).  By its plain language, 15 U.S.C. §1692i(a) does not apply

3  where, as here, the attorney filing the legal action is not a "debt collector" as defined by the FDCPA.

4        Under the FDCPA, "the term 'debt collector' means any person who … regularly collects or

5  attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another…."

6  15 U.S.C. §1692a(6).  "[F]or a court to find that an attorney or law firm 'regularly' collects debts for

7  purposes of the FDCPA, a plaintiff must show that the attorney or law firm collects debts as a matter of

8  course for its clients or for some clients, or collects debts as a substantial, but not principal, part of his

9  or its general law practice."  *Schroyer v. Frankel*, 197 F. 3d 1170, 1176 (6th Cir. 1999).  Factors courts

10  consider include "the volume of the attorney's collection activities, the frequent use of a particular debt

11  collection document or letter, [] whether there exists a steady relationship between the attorney and the

12  collection agency or creditor he represented," as well as "what portion of the overall caseload debt

13  collection cases constitute, and what percentage of revenues derive from debt collection activities."  *Id*.

### (a)    Defendants Have Not Offered Any Admissible Evidence That A "Debt Collector" Instituted Or Is Prosecuting This Action.

15        There is no competent evidence before the Court that Plaintiff's former counsel, Glassberg,

16  Pollak & Associates, is a "debt collector" as defined by the FDCPA.  To support this fundamental

17  premise, Defendants offer nothing more than inadmissible hearsay -- a single paragraph from

18  Martindale-Hubbell describing Glassberg, Pollak & Associates (Defendants' Exhibit 2) and a short

19  biography of one of its attorneys, Robert Pollak (Defendants' Exhibit 3).  Defendants offer no

20  admissible evidence regarding Glassberg, Pollak & Associates, the scope of its practice or the type of

21  cases it handles.  Defendants offer no public filings or surveys of public filings suggesting that the firm

22  collects consumer debts on a regular or systematic basis or is otherwise "regularly engaged" in debt

23  collection activity within the meaning of the FDCPA, as Defendants concede is required.  Motion at

24  5:28-6:13.  There is an utter failure of proof on this fundamental and dispositive question.[3]

25

26  ───────────────
[3] Despite the absence of competent evidence, even the hearsay materials submitted by Defendants refute any
27  inference that former counsel is a debt collector under the FDCPA.  In the motion, Defendants fail to distinguish
between Glassberg, Pollak & Associates' practice of collecting "commercial accounts," which are not covered by
28  the FDCPA (as discussed above), and any alleged practice of collecting "consumer accounts," which might be

*Footnote continues on next page.*

Case No. CV 08 2209 SI

10

SMITH LILLIS PITHA LLP

400 Montgomery Street, Suite 501 • San Francisco, CA  94104 • 415-814-0405 (t) 415-217-7011 (f)

1    The *Schroyer* case cited by and relied upon by Defendants actually supports Plaintiff's position.

2  Motion at 6. There, the plaintiffs based their FDCPA claims against a law firm on evidence showing

3  that "two percent of [defendant law firm] Smith & Smith's overall practices consisted of debt collection

4  cases," that "7.4%, 29 of 389 cases annually, of [one of its attorney's] overall practice consisted of debt

5  collection cases," and that the attorney "represented a number of business clients who were the source

6  of his twenty-nine debt collection cases." *Id.* at 1176. Despite this evidence – none of which is present

7  here – the *Schroyer* court found that the plaintiffs had failed to offer sufficient evidence to carry their

8  burden of proving that the law firm was a "debt collector" under the FDCPA:

9          Plaintiffs failed to offer evidence showing that fees generated or collected
           by Smith & Smith or Frankel from debt collection activities constituted a
10         great portion of overall revenues, and failed to offer proof that Smith &
           Smith or Frankel handled debt collection cases as part of an ongoing
11         relationship with a major creditor or business client with substantial debts
           for collection. While these facts do support the inference that it was not
12         unusual for Defendants to perform debt collection work, or that their debt
           collection work occurred in more than an isolated instance, we believe it
13         does not support a claim that Defendants were "in the business" of debt
           collection, that they were in the "debt collection" industry, or that Smith
14         & Smith was a "debt collection firm." Rather, the facts establish that
           Defendants' debt collection activities were incidental to, and not relied
15         upon or anticipated in, their practice of law, and that therefore they should
           not be held liable as "debt collectors" under the FDCPA.
16
   *Schroyer v. Frankel*, 197 F. 3d at 1176-77.
17
          The plaintiffs in *Schroyer* failed to prove that a law firm was subject to the FDCPA despite
18
   offering actual admissible evidence regarding case volume, caseload ratios, and client relationships.
19
   Defendants, by comparison, have offered no more than a few lines of text from Martindale-Hubbell.
20
   Defendants' "showing" on the fundamental "debt collector" element is just rank speculation coupled
21
   with hearsay. The motion fails.
22

23 _____

24  subject to the FDCPA. The hearsay Martindale-Hubbell description submitted by Defendants, if considered by
    the Court, clearly states that "Glassberg, Pollak & Associates primarily provides assistance to creditors in
    collecting delinquent and/or disputed <u>commercial accounts</u>." Defendants' Exhibit 2. Nowhere in the few lines of
25  "evidence" offered by Defendants does the Glassberg Pollak firm state or suggest that it engages in the practice
    of collecting "consumer accounts." Defendants ignore the fact that the FDCPA does not apply to commercial
26  obligations, and ignore the fact that the hearsay they submit to support their motion indicates that Glassberg
    Pollak has a practice of collecting commercial accounts, not consumer accounts. For this reason alone
27  Defendants' motion should be denied because, in the absence of a "debt collector" filing suit, the FDCPA
    "venue" provision does not apply.
28

SMITH LILLIS PITHA LLP
400 Montgomery Street, Suite 501 • San Francisco, CA 94104 • 415-814-0405 (t) 415-217-7011 (f)

**(b)    The Substitution Of New Counsel For Plaintiff Renders Defendants' Motion Moot.**

Even if venue was not proper under 28 U.S.C. §1441(a), even if the FDCPA applied to Defendants' obligation to pay for legal fees , and even if Glassberg, Pollak & Associates was a debt collector under the FDCPA, the fact that Glassberg, Pollak & Associates no longer represents Plaintiff in this action renders Defendants' motion moot.  New counsel for Plaintiff is not in the collection business and is not a debt collector.  As such, because the "venue" provision of the FDCPA does not apply to an action prosecuted by a law firm that is not a "debt collector" under the FDCPA, the FDCPA presents no barrier to this case moving forward.

Common sense should also play a role here.  Because current counsel for Plaintiff is not a debt collector under the FDCPA, Plaintiff could simply dismiss its present suit, have current counsel re-file it, and thereby eliminate any possible FDCPA challenge to venue.  Defendants' refusal to withdraw their motion in light of the substitution of new counsel reveals this motion for what it is – a delay tactic, plain and simple.

## IV.    CONCLUSION

Venue is proper in this Court under 28 U.S.C. §1441(a).  The FDCPA does not apply.  For these and all of the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion.

Dated:  July 3, 2008                    SMITH LILLIS PITHA LLP

By: _____
                    DAMIEN P. LILLIS
                    Attorneys for Plaintiff

# EXHIBIT 1

# EXHIBIT 1

1   ROBERT L. POLLAK, State Bar Number 083950
2   GLASSBERG, POLLAK & ASSOCIATES
    425 California Street, Suite 850
3   San Francisco, CA 94104-2193
    (415) 291-8320 phone
4   (415) 291-8111 fax
    gpa@glassberg-pollak.com
5   Attorneys for Plaintiff    CASE MANAGEMENT CONFERENCE SET

ENDORSED
FILED
SAN FRANCISCO COUNTY
SUPERIOR COURT

2008 MAR 13   AM 12: 08

BY: ELIAS BUTT
DEPUTY CLERK

6

7                           AUG 1 5 2008 -9ᵒᵒAM

8                           DEPARTMENT 212
9           SUPERIOR COURT, STATE OF CALIFORNIA
10              SAN FRANCISCO COUNTY
11              UNLIMITED CIVIL JURISDICTION

12  SIMMONDS & NARITA LLP, a limited        )   CASE NO. CGC-08-473266
    liability partnership,                  )
13                                          )
            Plaintiff,                       )
14                                          )   COMPLAINT FOR MONEY
    vs.                                     )   DUE FOR ATTORNEYS' FEES
15                                          )
                                            )   ($88,552.99)
16  JEFFREY SCHREIBER; SUZANNE E.           )
    SCHREIBER; and DOES 1 through 50,       )
17  inclusive,                              )
                                            )
18          Defendants.                      )
                                            )
19  _____  )

20      Plaintiff alleges:

21              FIRST CAUSE OF ACTION

22      (Money Due For Legal Services to all defendants)

23      1.      At the time the services hereinafter mentioned were performed,

24  Plaintiff SIMMONDS & NARITA LLP was, and now is, a California limited

25  liability partnership, each member of which is an active member of the State

26  Bar of California duly licensed to practice law in the State of California.

27      2.      Defendant JEFFREY SCHREIBER is an individual.

28      3.      Defendant SUZANNE E. SCHREIBER is an individual.

4.     Plaintiff is not aware of the true names and capacities whether individual, corporate or otherwise, of Defendants DOES 1 through 50, and therefore sues said defendants by such fictitious names, and Plaintiff will amend this complaint to show their true names and capacities when they have been ascertained.

5.     Within two years last at San Francisco, California, Defendants became indebted to Plaintiffs in the sum of $88,552.99 for professional legal services furnished and supplied by Plaintiff to Defendants.

6.     Said services were so furnished and supplied pursuant to a written agreement, a copy of which is attached as Exhibit "A".

7.     No part of the said sum of $88,552.99 has been paid, and there is now due, owing and unpaid the sum of $88,552.99 plus interest thereon at ten percent (10%) per annum from and after January 11, 2008.

8.     Prior to the commencement of this action, Plaintiff caused to be given to the Defendants written notice required under Sect. 6201 of the Business and Professions Code.  A true copy of that notice is attached hereto, marked Exhibit "B" and made a part hereof.

AS AND FOR A SECOND, SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFF COMPLAINS OF DEFENDANTS, AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

(Book Account)

9.     Plaintiff herein incorporates by reference each and every allegation contained in Paragraphs 1, 2, 3, 4, 5, 7 and 8 of the First Cause of Action as though fully set forth and pleaded herein.

10.     Within four (4) years last past, Defendants became indebted to Plaintiff in the sum of $88,552.99 on a book account for professional legal services furnished and supplied.

COMPLAINT FOR MONEY DUE FOR ATTORNEYS' FEES - 2

11.    Plaintiff should be awarded reasonable attorneys' fees in the sum of $1,000.00 pursuant to the provisions of Civil Code Sect. 1717.5.

*AS AND FOR A THIRD SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFF COMPLAINS OF DEFENDANTS, AND EACH OF THEM, AND ALLEGES AS FOLLOWS:*

(Account Stated)

12.    Plaintiff refers to paragraphs 1, 2, 3, 4, 5, 7 and 8 of the first cause of action, and by said reference incorporates said paragraphs herein as if the same were more fully herein set forth.

13.    Within four (4) years last past at San Francisco, California, an account was stated by and between Defendants and Plaintiff wherein and whereby Defendants became indebted to Plaintiff in the sum of $88,552.99.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.    For the sum of $88,552.99;

2.    For interest on said amount at the rate of ten percent (10%) per annum from January 11, 2008;

3.    For attorney's fees in the sum of $1,000.00;

4.    For costs of suit incurred herein; and

5.    For such other and further relief as this Court may deem just and proper.


DATED: March 11, 2008                    GLASSBERG, POLLAK & ASSOCIATES


                                         ROBERT L. POLLAK
                              By:_____
                                         ROBERT L. POLLAK
                                         Attorneys for Plaintiff

# SIMMONDS & NARITA LLP

ATTORNEYS AT LAW
44 MONTGOMERY STREET, SUITE 3010
SAN FRANCISCO, CALIFORNIA 94104-4811
TELEPHONE (415) 283-1000
FAX (415) 352-2625
www.snllp.com

TOMIO B. NARITA
DIRECT DIAL (415) 283-1010
EMAIL tnarita@snllp.com

April 24, 2007

Suzanne E. Schreiber
c/o Castle Mountain Capital, LLC
1000 Elm Street
Manchester, NH 03101

Jeffrey Schreiber
c/o The Schreiber Law Firm, LLC
702 S. Adams Street
Marion, IN 46953

Re:    *Engagement Agreement*

Dear Suzanne and Jeff:

We are very pleased that you have decided to engage our firm as counsel to represent you in connection with the action that was filed against you in the Superior Court of the State of California, County of Alameda, *Robert M. Siemons v. First USA Bank, et al.*, Case No. VG04172153. This letter describes the scope of the representation and how we will be compensated for the legal services that we provide.

Although we will strive to serve you effectively, this firm cannot guarantee the result of any given legal dispute. Nor can we determine in advance the costs of our legal services with precision. We will seek to represent your interests professionally and efficiently throughout our engagement. I will have primary responsibility for your representation, and I will utilize other attorneys and professionals in the best exercise of my professional judgment. In the event that you have questions, concerns or criticisms about the services provided by the firm, please contact me at once.

Our fees reflect the substantial value of the work product that we provide and the significant experience, specialization and training of our professionals. I will review all

EXHIBIT A

SIMMONDS & NARITA LLP

Suzanne E. Schreiber
Jeffrey Schreiber
April 24, 2007
Page 2

statements before they are issued to insure that the amount charged is appropriate. Our
bills are generally the product of the hours worked on your matter multiplied by the hourly
rates for the attorneys and other professionals who performed the services. We always
review our bills before they are sent to determine if any reductions are appropriate.

We will provide you with detailed monthly statements for professional services
that we perform. Our statements are due and payable upon receipt.

Our monthly statements reflect services rendered through the end of the preceding
month, and they include out-of-pocket expenses incurred to the extent invoices have been
received in the current period. These expenses may include telephone calls, photocopies,
court reporters' fees, postage, overnight courier charges, messengers' fees, expert witness
fees, travel costs, local transportation expenses, computer research charges, and filing,
certification and recording fees. In the event that we receive an invoice from any vendor
with respect to your matter which exceeds $1000, we reserve the right to ask you to pay the
invoice directly. Delays in payment could affect our ability to successfully represent you.

We expect full cooperation and candor from all of our clients. You agree to
communicate with us, to provide us with all information that we believe is necessary to
your representation, and to cooperate fully in your representation. Failure to cooperate
with us, or failure to pay our statements promptly upon receipt, may lead to discontinuance
of legal services. In the event that we need to withdraw from representation, we will give
you notice of our intention to do so, and will recommend that you engage other counsel.
We will cooperate in delivering all files to which you are entitled, coordinate with counsel
that you subsequently employ, and attempt to minimize the possibility that your interests
will be prejudiced.

We have prepared a schedule of hourly rates for the attorneys and other members of
the professional staff based on their years of experience, specialization, training and level
of professional attainment. There may be certain aspects of your representation which
require a higher level of expertise than others. We seek to assign and delegate
responsibilities for all aspects of your representation based on the degree of professional
experience and expertise required.

We agree to represent you at our present hourly rates. Currently, the rates for our
partners range from $350 to $390 per hour (my rate will be $350 per hour), the rates for our
associates range from $200 to $290 per hour, and the rates for our legal assistants range
from $100 to $130 per hour. Our rates may increase during this engagement to reflect
market conditions and the additional experience and expertise of our attorneys and staff.

SIMMONDS & NARITA LLP

Suzanne E. Schreiber
Jeffrey Schreiber
April 24, 2007
Page 3

I have advised each of you of the challenges that you face in this case, and that the cost of representing you in this matter may be significant. As I have stated to you, in my estimation, given the nature of the courthouse where the action is pending, the apparent personality of the plaintiff and his counsel, the present record of the case, the claims that have been asserted, and the facts of the case as I understand them, it will cost a minimum of $50,000 to defend you. In addition, I have advised you that if this matter proceeds to trial, I estimate the cost of defending the claims will be at least $150,000, and the cost could exceed this amount. Even if you incur these defense costs, there is still no guarantee that we will be able to successfully defend you against the claims asserted.

You have agreed to provide us with a $50,000 retainer and to execute a substitution *in two $25,000 installments JP* of attorney form before we commence work on the case. The retainer can be transmitted to us via certified check or via wire transfer, pursuant to instructions that I will provide you. We will ask you to maintain a total of $25,000 of this retainer on an "evergreen" basis. This means that after we draw against the first $25,000 of the retainer amount, we will send you statements on a monthly basis that we will ask you to pay in full. We will maintain the balance of the retainer ($25,000) in our client trust account on your behalf. By signing this engagement agreement, you acknowledge that you will be jointly and severally liable for payment of all of the fees and costs incurred by our firm in connection with the representation. We will do everything possible to keep your fees and costs to a minimum. At the end of our engagement, any remaining balance of the retainer will be returned to you.

We discussed the fact that I will communicate with both of you concerning the matter, but that I may need to turn to one of you to make decisions on matters of strategy affecting the case. You agreed that while I can and will consult with both of you concerning the representation, the "point" person for matters of legal strategy will be Jeffrey Schreiber, unless and until you instruct me otherwise in writing. We also discussed the fact that you have both been named as individual defendants in the action, and that our firm will be providing representation to both of you. At this time, it is our belief that there is no actual or potential conflict of interest between your interests, and that you both share the same common interest with respect to the claims asserted by the plaintiff. We are presently confident that we can represent both of you in this matter without any conflict of interest.

We do have a professional obligation to advise you, however, whenever we believe that there may be a potential conflict, or the appearance of a conflict, between your interests. In the unlikely event that such a potential or actual conflict should arise in the future, we will discuss the situation with both of you and then determine an appropriate and

SIMMONDS & NARITA LLP

Suzanne E. Schreiber
Jeffrey Schreiber
April 24, 2007
Page 4

acceptable course of action.

Having said this, we ask each of you to sign below and acknowledge that we have informed you of the matters identified above, and that you consent to our firm's dual representation of Suzanne Schreiber and Jeffrey Schreiber in the action. We are obliged to inform you that you may wish to seek independent legal advice with respect to this matter.

You have the right to terminate our representation at any time.

If the terms of this engagement letter meet with your approval, please sign this letter and return it to me. If you have any questions, please feel free to call me.

Very truly yours,


Tomio B. Narita



AGREED to this 1st day of May, 2007

By: _____
     Suzanne E. Schreiber


By: _____
     Jeffrey Schreiber



EXHIBIT A4

# Notice of Client's Right To Arbitration

Jeffrey Schreiber
Client's Name

c/o The Schreiber Law Firm
Client's Address

810 S. Baldwin Ave., Marion, IN 46953

Simmonds & Narita LLP
Attorney's Name

44 Montgomery Street, Suite 3010
Attorney's Address

San Francisco, CA 94104-4816

You have an outstanding balance for fees and/or costs for professional services in the amount of $88,552.99

charged to you in the matter of Robert Seimons v. First USA Bank, et al., Superior Court of

California, County of Alameda, Case No. VG04172153

☐ I have filed a lawsuit against you in the:

Court    Case No.

Address

☐ I have filed an arbitration proceeding against you with the:

Agency    Case No.

Address

☒ No lawsuit or arbitration proceeding has yet been filed but may be filed if we do not resolve this claim.

You have the right under Sections 6200-6206 of the California Business and Professions Code to request arbitration of these fees or costs by an independent, impartial arbitrator or panel of arbitrators through a bar association program created solely to resolve fee disputes between lawyers and clients.

You will LOSE YOUR RIGHT TO ARBITRATION UNDER THIS PROGRAM if:

1.  YOU DO NOT FILE A WRITTEN APPLICATION FOR ARBITRATION WITH THE BAR ASSOCIATION WITHIN 30 DAYS FROM RECEIPT OF THIS NOTICE USING A FORM PROVIDED BY THE LOCAL BAR ASSOCIATION OR STATE BAR OF CALIFORNIA FEE ARBITRATION PROGRAM; OR

2.  YOU RECEIVE THIS NOTICE AND THEN EITHER (1) ANSWER A COMPLAINT I HAVE FILED IN COURT; OR (2) FILE A RESPONSE TO ANY ARBITRATION PROCEEDING THAT I HAVE INITIATED FOR COLLECTION OF FEES, AND/OR COSTS, WITHOUT FIRST HAVING SERVED AND FILED A REQUEST FOR ARBITRATION UNDER THIS PROGRAM; OR

3.  YOU FILE AN ACTION OR PLEADING IN ANY LAWSUIT WHICH SEEKS A COURT DECISION ON THIS DISPUTE OR WHICH SEEKS DAMAGES FOR ANY ALLEGED MALPRACTICE OR PROFESSIONAL MISCONDUCT.

I have the right to file a lawsuit against you if you give up your right to mandatory fee arbitration. If I have already filed a lawsuit or arbitration, you may have the lawsuit or arbitration postponed after you have filed an application for arbitration under this program.

I have determined that:

☐ There is a local program which may have jurisdiction to hear this matter. The address of the arbitration program you should contact is:

Bar Association of San Francisco
Name of Program

301 Battery Street, 3rd Floor
Address

San Francisco    CA    94111
City    State    Zip Code

(415) 982-1600
Telephone No

☐ There is no approved local program which has jurisdiction to hear this matter.

The State Bar of California will conduct fee arbitration (1) where there is no approved local program, (2) where there is a local program but it declines for any reason to hear your case, (3) where there is a local program and you wish non-binding arbitration of this dispute and the local program refuses to allow non-binding arbitration of your dispute, or (4) if you believe you cannot receive a fair hearing before the local bar named above. If you need assistance, please contact Mandatory Fee Arbitration, State Bar of California, 180 Howard Street, San Francisco, CA 94105-1639, (415) 538-2020.

March 5, 2008
Date

ROBERT L. POLLAK

Attorney ROBERT L. POLLAK

EXHIBIT B\    (State Bar Approved Form Rev. April 1, 2007)

# Notice of Client's Right To Arbitration

Suzanne E. Schreiber
Client's Name
c/o Zwicker & Associates, P.C.
Client's Address
80 Minuteman Road, Andover, MA 01810-1031

Simmonds & Narita LLP
Attorney's Name
44 Montgomery Street, Suite 3010
Attorney's Address
San Francisco, CA 94104-4816

You have an outstanding balance for fees and/or costs for professional services in the amount of $ 88,552.99

charged to you in the matter of Robert Seimons v. First USA Bank, et al., Superior Court of California, County of Alameda, Case No. VG04172153

☐ I have filed a lawsuit against you in the:

| | |
|---|---|
| Court | Case No. |
| Address | |

☐ I have filed an arbitration proceeding against you with the:

| | |
|---|---|
| Agency | Case No. |
| Address | |

☒ No lawsuit or arbitration proceeding has yet been filed but may be filed if we do not resolve this claim.

You have the right under Sections 6200-6206 of the California Business and Professions Code to request arbitration of these fees or costs by an independent, impartial arbitrator or panel of arbitrators through a bar association program created solely to resolve fee disputes between lawyers and clients.

You will LOSE YOUR RIGHT TO ARBITRATION UNDER THIS PROGRAM if:

1.  YOU DO NOT FILE A WRITTEN APPLICATION FOR ARBITRATION WITH THE BAR ASSOCIATION WITHIN 30 DAYS FROM RECEIPT OF THIS NOTICE USING A FORM PROVIDED BY THE LOCAL BAR ASSOCIATION OR STATE BAR OF CALIFORNIA FEE ARBITRATION PROGRAM; OR

2.  YOU RECEIVE THIS NOTICE AND THEN EITHER (1) ANSWER A COMPLAINT I HAVE FILED IN COURT; OR (2) FILE A RESPONSE TO ANY ARBITRATION PROCEEDING THAT I HAVE INITIATED FOR COLLECTION OF FEES, AND/OR COSTS, WITHOUT FIRST HAVING SERVED AND FILED A REQUEST FOR ARBITRATION UNDER THIS PROGRAM; OR

3.  YOU FILE AN ACTION OR PLEADING IN ANY LAWSUIT WHICH SEEKS A COURT DECISION ON THIS DISPUTE OR WHICH SEEKS DAMAGES FOR ANY ALLEGED MALPRACTICE OR PROFESSIONAL MISCONDUCT.

I have the right to file a lawsuit against you if you give up your right to mandatory fee arbitration. If I have already filed a lawsuit or arbitration, you may have the lawsuit or arbitration postponed after you have filed an application for arbitration under this program.

I have determined that:

☐ There is a local program which may have jurisdiction to hear this matter. The address of the arbitration program you should contact is:

Bar Association of San Francisco
Name of Program
301 Battery Street, 3rd Floor
Address
San Francisco                                    CA        94111
City                                       State      Zip Code
(415) 982-1600
Telephone No

☐ There is no approved local program which has jurisdiction to hear this matter.

The State Bar of California will conduct fee arbitration (1) where there is no approved local program, (2) where there is a local program but it declines for any reason to hear your case, (3) where there is a local program and you wish non-binding arbitration of this dispute and the local program refuses to allow non-binding arbitration of your dispute, or (4) if you believe you cannot receive a fair hearing before the local bar named above. If you need assistance, please contact Mandatory Fee Arbitration, State Bar of California, 180 Howard Street, San Francisco, CA 94105-1639, (415) 538-2020.

March 5, 2008                    ROBERT L. POLLAK
Date                           Attorney ROBERT L. POLLAK

EXHIBIT B2                                   (State Bar Approved Form Rev. April 1, 2007)